GLENN D. FUQUA v. ROCKINGHAM COUNTY BOARD OF SOCIAL SERVICES

No. COA95-560

(Filed 7 January 1997)

**1. Public Works and Contracts § 21 (NCI4th)— State Personnel Commission—DSS director—dismissal—computer equipment—improper purchases**

The trial court properly affirmed the State Personnel Commission's findings that plaintiff, the director of the Rockingham County Department of Social Services, failed to comply with the bidding and public record requirements of N.C.G.S. § 143-131 when he purchased $9,600 worth of imaging equipment and software, without informal bids, and arranged to have the seller provided two separate invoices so the purchase appeared to be valued at less than $5,000. Substantial evidence in the record supported a determination that petitioner purchased equipment in an amount over $5,000 and thus was required to comply with the bidding provisions of the statute.

**Am Jur 2d, Public Works and Contracts § 39.**

**Determination of amount involved in contract within statutory provision requiring public contracts involving sums exceeding specified amount to be let to lowest bidder. 53 ALR2d 498.**

**2. Public Officers and Employees § 63 (NCI4th)— circumvented statute—purchase requirements—dismissal—DSS director—not arbitrary, or capricious, or erroneous**

Plaintiff was properly dismissed as director of the Rockingham County Department of Social Services for personal misconduct without notice where the plaintiff violated the purchasing requirements of N.C.G.S. § 14-131 and county purchasing procedures. The evidence at trial indicated that plaintiff circumvented the statute and county rules by misidentifying purchased computer equipment, requesting the vendor to provide two separate invoices, ignoring the required approval process for purchasing computer equipment, and paying for the equipment under the wrong accounting line item.

**Am Jur 2d, Public Officers and Employees §§ 152-229.**

**Rights of state and municipal public employees in grievance proceedings. 46 ALR4th 912.**

**FUQUA v. ROCKINGHAM COUNTY BD. OF SOC. SERV.**

[125 N.C. App. 66 (1997)]

Appeal by petitioner from order filed 15 March 1995 by Judge Jack Thompson in Wake County Superior Court. Heard in the Court of Appeals 22 February 1996.

*Elliot, Pishko, Gelbin & Morgan, P.A., by David C. Pishko, for petitioner-appellant.*

*Womble Carlyle Sandridge & Rice, A Professional Limited Liability Company, by James R. Morgan, Jr., for respondent-appellee.*

JOHN, Judge.

Petitioner Glenn D. Fuqua appeals the trial court's order affirming his dismissal as director of the Rockingham County Department of Social Services (the Department) by the Rockingham County Board of Social Services (the Board). We affirm.

Petitioner was initially retained in the position of director on 2 January 1967. He served continuously until his dismissal in September 1992. During petitioner's tenure, he had received no written warnings concerning job performance and, as acknowledged by the Board in dismissing him, had led the Department to a "fine record of accomplishment."

Petitioner was dismissed based upon his role in obtaining imaging equipment and computer software for the Department. According to the Board, petitioner failed to obtain the requisite prior approval of the purchase from the county data processing director, failed to obtain an amendment to the Department's budget to allow procurement of imaging equipment and corresponding computer software, and violated state law by splitting invoices for the equipment and software in order to avoid having to comply with statutory provisions governing bids.

Subsequent to petitioner's dismissal, he sought review by the Office of Administrative Hearings. Following a hearing, the Administrative Law Judge (ALJ) assigned to the case recommended that the Board's decision be left undisturbed. The State Personnel Commission (the Commission) thereafter adopted each of the findings and conclusions set out by the ALJ save one irrelevant to our decision herein, and, in a Decision and Order filed 23 February 1994, recommended that petitioner's dismissal "be upheld as being for just cause."

The Board adopted the decision of the ALJ (and by relation, that of the Commission) in a vote taken 25 April 1994. Petitioner thereafter sought judicial review pursuant to N.C.G.S. § 150B-43 *et seq.* in Wake County Superior Court, which court subsequently affirmed his dismissal. Petitioner finally appealed to the Court of Appeals.

---

The North Carolina Administrative Procedure Act (APA), codified at Chapter 150B of the General Statutes, governs our review of the Commission's decision. *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 673, 443 S.E.2d 114, 117 (1994). Under the statute, we may reverse or modify the Commission's ruling if petitioner's substantial rights may have been prejudiced because the Commission's findings, inferences, conclusions, or decision are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or   .

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1995). The nature of our review is dependent upon the grounds asserted by petitioner:

> If [petitioner] argues the agency's decision was based on an error of law, then "*de novo*" review is required. If, however, [petitioner] questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.

*Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118 (quoting *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993)).

[1] Petitioner first contends the finding of the Commission that he violated state purchasing procedures was not supported by substantial evidence in the record. The finding at issue reads: "Petitioner did not properly solicit bids for the purchased equipment and software, nor did he maintain accurate records as required."

**FUQUA v. ROCKINGHAM COUNTY BD. OF SOC. SERV.**

[125 N.C. App. 66 (1997)]

Under *Amanini,* we therefore examine the "whole record" to determine whether substantial evidence exists to support the Commission's finding. *Id.*

"Substantial evidence" is that which a reasonable mind would consider sufficient to support a particular conclusion, and must be more than a scintilla or just a permissible inference.

*Id.* at 682, 443 S.E.2d at 122 (citations omitted).

The statute petitioner is alleged to have violated is N.C.G.S. § 143-131 (1996), which provides:

All contracts . . . for the purchase of apparatus, supplies, materials, or equipment, involving the expenditure of public money in the amount of five thousand dollars ($5,000) or more, but less than [$20,000], made by any officer, department, board, or commission of any county . . . shall be made after informal bids have been secured. All such contracts shall be awarded to the lowest responsible bidder, taking into consideration quality, performance, and the time specified in the bids for performance of the contract. It shall be the duty of any officer, department, board, or commission entering into such contract to keep a record of all bids submitted, and such record shall be subject to public inspection at any time.

Petitioner argues the statute was inapplicable to the purchase at issue because he effected two separate transactions of less than $5,000 each: the first, totalling $4,900, involved imaging system hardware; the second, in the amount of $4,600, was for Smartfile brand imaging system software, operating manuals, and technical assistance.

However, Larry Wayne Scruggs, Sr. (Scruggs), the Smartfile representative with whom petitioner dealt, testified that everything sold to petitioner was part of one system. Scruggs indicated he would not have sold the software separately from the imaging hardware. Most significantly, Scruggs revealed that the Department was billed for the equipment on two separate invoices because petitioner specifically requested such billing. Therefore, substantial evidence in the record supports a determination that petitioner purchased equipment in an amount over $5,000 and thus was required to comply with the bidding provisions of the statute.

We next consider whether there was substantial evidence that petitioner failed to obtain informal bids and to keep a record of such bids "subject to public inspection" as required by G.S. § 143-131.

James Joyce (Joyce), one of petitioner's subordinates highly involved in the system procurement process, testified he knew of no public record maintained by the Department of any bids received. Moreover, the only bid referred to in the record arguably maintained by petitioner as a "record" was that from Aamot Information Services, Inc. (Aamot). Aamot mailed pricing information to petitioner, who retained it in his file cabinet. However, the bid submitted by Aamot contained a price of $34,716.00 for one work station; by comparison, the system ultimately purchased cost $9,500. No evidence suggests Aamot's quote was directed at a similar type of system as that eventually purchased by petitioner.

Indeed, Ben Neal (Neal), assistant county manager, testified that Aamot's price was for a much more elaborate system than the one purchased by petitioner and, for that reason, its quote was useless to the bidding process. In addition, Ronny Winn (Winn), the county's director of data processing, testified that while investigating the propriety of petitioner's purchase, he obtained a price of $5900 from a discount catalog for the system bought by petitioner, excluding software. This detail further suggests Aamot did not quote on the system eventually purchased by petitioner. Lastly, petitioner himself admitted that the system about which Aamot sent pricing information was "not in the configuration that we finally chose."

Based on the foregoing, we hold the Commission's finding that petitioner failed to comply with the bidding and public record requirements of G.S. § 143-131 is supported by substantial evidence in the record. The fundamental purpose of the bidding process is to solicit various prices from competing providers on *similar* goods or services so that obtaining the lowest possible price may be assured.

[2] In his second and final argument, petitioner attacks, as being affected by error of law, the Commission's conclusion that violation of statutory purchasing requirements constituted "just cause" for his dismissal. As to this contention, we employ *de novo* review. *See Amanini*, 114 N.C. App. at 678, 443 S.E.2d at 120. Specifically, petitioner insists his alleged infractions in failing to follow state bidding procedures and failing to obtain prior purchasing approval fell within the "job performance" category of disciplinary action, and thus required a warning before dismissal was permissible.

**FUQUA v. ROCKINGHAM COUNTY BD. OF SOC. SERV.**

[125 N.C. App. 66 (1997)]

25 N.C.A.C. 1I .2301(b) (August 1992), promulgated pursuant to the State Personnel Act (the Act), *see* N.C.G.S. § 126-4(7a) (1995), provides that:

The basis for any disciplinary action taken in accordance with this policy falls into one of the two following categories:

(1) Discipline imposed on the basis of job performance;

(2) Discipline imposed on the basis of personal conduct.

While dismissal on the basis of job performance requires at least three prior warnings, *see* 25 N.C.A.C. 1I .2302 (August 1992), dismissal based on personal conduct may occur without any prior warning, *see* 25 N.C.A.C. 1I .2304 (August 1992).

25 N.C.A.C. 1I .2301(b) explains:

The Job Performance category is intended to be used in addressing performance-related inadequacies for which a reasonable person would expect to be notified of and allowed an opportunity to improve. Personal Conduct discipline is intended to be imposed for those actions for which no reasonable person could, or should, expect to receive prior warnings.

The foregoing distinction is clarified in 25 N.C.A.C. 1I .2304 (effective August 1992, amended December 1995), which details, *inter alia*, the following examples of unacceptable personal conduct:

(2) job related conduct which constitutes a violation of state or federal law; or

. . . .

(4) the willful violation of known or written work rules[.]

Although not set out in the Administrative Code at the time petitioner was dismissed, we believe these examples may properly be considered in determining whether he was properly terminated on the basis of personal conduct. *See Al Smith Buick Co. v. Mazda Motor of America*, 122 N.C. App. 429, 435, 470 S.E.2d 552, 555 (1996) (when statute contains ambiguous language, legislative intent may be ascertained by amendments to statute).

As discussed above, the record supports the Commission's determination that petitioner violated state law in failing to obtain and keep a record of informal bids. *See* G.S. § 143-131. We conclude the

record would further legitimately support a finding petitioner violated N.C.G.S. § 143-133 (1996), which mandates that "[n]o bill or contract shall be divided for the purpose of evading the [bidding requirements for state contracts]."

Scruggs, for example, testified petitioner directed him to bill the Department in two separate invoices. Although Scruggs could not "recall" whether petitioner specifically indicated that both invoices should be kept under $5,000, petitioner's directive that the $9,500 total price for the package be divided between two invoices, without further explanation, constitutes strong circumstantial evidence of an intent to evade the statutory bidding requirements.

In addition, there is evidence petitioner willfully violated known work rules. Pat New (New), an accounting technician for the Department, stated that acquisitions of "data processing or computerware" were required to be approved by Winn. Joyce, a Department computer programmer and witness called by petitioner, testified Winn's approval was sought "in every instance" involving purchases of computer equipment. Finally, petitioner himself conceded it "possibly" was common knowledge in the Department that all computer equipment purchases were required to be sanctioned by Winn.

In any event, it is undisputed that petitioner failed to obtain Winn's approval prior to purchase of the imaging package. Moreover, petitioner admitted in deposition that he had been told "Mr. Winn was not in favor of imaging, that it was too expensive and he just didn't think [the purchase] would go down." The record thus supports a determination that petitioner purposefully avoided seeking the prior approval of Winn because petitioner knew it would not be forthcoming.

Further, Neal testified that acquisition of the imaging system required a line item in the Department's budget, and that no such entry was contained therein. The record indicates petitioner circumvented this work procedure by paying for the equipment under a line item designated "microfilm services."

First, Scruggs testified petitioner asserted "he had a microfilm budget" and instructed Scruggs to write "microfilm service" on the imaging system invoices. Further, New stated petitioner directed her to pay for the equipment with money allotted to microfilming. Finally, in his own testimony, petitioner admitted that, although the county had in place a procedure for transferring a purchase from one budget

line item to another, he failed to follow this procedure and the imaging equipment was paid for under the "microfilm services" line item. Ample evidence thus sustains a determination that petitioner intentionally violated established work rules and procedures.

In sum, we hold substantial evidence in the record supports the conclusion that petitioner's purchase of an imaging system for the Department involved violations of state law and willful violations of known work rules. Accordingly, the Commission properly considered petitioner's actions in the context of the Act under the category of personal conduct rather than job performance.

As an alternate argument, petitioner points to the Rockingham County Personnel Ordinance, which specifies the following as examples of failure in personal conduct:

(d)  Misappropriation of county funds or property;

(e)  Falsification of county records for personal profit or to grant special privileges[.]

Petitioner insists that because his actions were not for personal gain and were intended only to benefit the Department, they cannot properly be considered a failure in personal conduct under the county ordinance.

However, nothing in the record indicates the Act and attendant regulations have been supplanted by the County Ordinance. *See* N.C.G.S. § 126-11(a) (1995) (if county personnel system *approved* by State Personnel Commission, county system governs rather than Act). Further, examination of the county ordinance reveals that the listed examples of failure in personal conduct are not exclusive. Also, the examples contained in the ordinance as representative of failure in job performance appear to be distinct from a *willful* disobedience of regulations (*see, e.g.*, "Careless, *negligent* or improper use of county property or equipment").

In actuality, petitioner's argument is that, even if his actions may properly be characterized as personal misconduct, a higher level of personal misconduct should be required in order to allow his dismissal without warning. *See Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118 (manner of review not dictated merely by label appellant places upon assignments of error; court may determine actual nature of contended error). Such a contention implicates the "arbitrary or capricious" standard of review under the APA. *See Eury v.*

FUQUA v. ROCKINGHAM COUNTY BD. OF SOC. SERV.

[125 N.C. App. 66 (1997)]

*N.C. Employment Security Comm.*, 115 N.C. App. 590, 611, 446 S.E.2d 383, 395-96, *appeal dismissed and disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994) (to avoid arbitrary and capricious decision to dismiss where personal misconduct based upon off-duty criminal act, agency before dismissal must determine whether nexus existed between the criminal conduct and potential adverse impact on ability to perform job).

However,

[t]he "arbitrary or capricious" standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are "patently in bad faith," or "whimsical" in the sense that "they indicate a lack of fair and careful consideration" or "fail to indicate 'any course of reasoning and the exercise of judgment'. . . ."

*Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989) (citations omitted).

In view of petitioner's diligent service to the Department for some twenty-five years, a less strict penalty might have been imposed. However, while we might have been more leniently inclined if sitting as the Board, we cannot say the decision to dismiss petitioner based upon his willful failure to follow county and state purchasing procedures may fairly be characterized as "patently in bad faith" or "fail[ing] to indicate any course of reasoning." *Id.*

In conclusion, we must affirm the trial court's determination that the Board's dismissal of petitioner was "supported by substantial evidence in the record" and "not arbitrary or capricious, or erroneous as a matter of law."

Affirmed.

Judges EAGLES and WALKER concur.