RICHARD G. STEEVES, Petitioner v. SCOTLAND COUNTY BOARD OF HEALTH AND SCOTLAND COUNTY, Respondents

No. COA01-1271

(Filed 20 August 2002)

## 1. Appeal and Error— remand—law of the case

The superior court was free to change its conclusions on remand of a case involving the dismissal of a county health director where the remand was for reconsideration under the proper standard of appeal. The appellate court did not reach the merits and the trial court's first ruling was not the law of the case.

2. **Public Officers and Employees— dismissal without notice—unacceptable personal conduct—contracts not preaudited**

A county health director's failure to obtain preaudits of contracts in violation of N.C.G.S. § 159-28 did not constitute unacceptable personal conduct sufficient to warrant dismissal without prior warning. The legislature did not intend to include as "unacceptable personal conduct" an administrative requirement of which no one informed petitioner during the seven years he performed his duties. The violation of state or federal law contemplated by the regulation defining unacceptable personal conduct must be a violation of law which threatens to immediately disrupt work, threatens the safety of persons or property, or is a violation for which a reasonable person would expect to be dismissed without warning.

Appeal by petitioner from orders entered 8 December 2000 and 31 July 2001 by Judge Dexter Brooks in Scotland County Superior Court. Heard in the Court of Appeals 12 June 2002.

*Voerman Law Firm, P.L.L.C., by David P. Voerman and David E. Gurganus, for petitioner-appellant.*

*Poyner & Spruill L.L.P., by Thomas R. West, Terry Richard Kane and Pamela A. Scott, for respondent-appellees.*

HUDSON, Judge.

Richard G. Steeves ("petitioner") appeals from an order affirming a decision of the Scotland County Board of Health (the "Board") and an order denying his motion for new trial, amendment of judgment and relief from judgment. For the reasons below, we reverse the superior court's order affirming the decision of the Board. Thus, petitioner's motion for new trial, amendment of judgment and relief from judgment is moot.

By letter dated 23 June 1997, the Board dismissed petitioner from his employment as the Scotland County Health Director, because of "unacceptable personal conduct in violating State law." In the letter, the Board stated that petitioner had violated the Local Government Finance Act (the "Act"), see N.C. Gen. Stat. § 159-28 (2001), which requires that contracts be preaudited by the finance officer, and identified several contracts that did not contain the requisite preaudit certificate.

Petitioner filed a petition for contested case hearing in the Office of Administrative Hearings ("OAH"). His petition was accompanied by a sworn statement, which incorporated a letter that he and his attorney had written to the Board. This letter included petitioner's responses to the charges that the Board had made against him. In particular, petitioner stated the following:

> The first time I ever received the Local Government Budget and Fiscal Control Act or had actually read the Act was on May 20, 1997, after I had personally ordered and received it from the Institute of Government. I had received no specific training in the implementation of the Act, and I did not realize that contracts with the county always legally required a pre-audit statement. It had been my practice, in my seven (7) years as the Health Director with Scotland County, to enter into contracts that were validly budgeted and had been approved during the budget process. I was aware, on some occasions, that the "pre-audit statement" was placed upon contracts that had been developed by the County. Contracts that were developed by third parties for our signatures did not generally contain any pre-audit statement on them. I was also aware, generally, that I was not supposed to enter into contracts without valid budgetary approval; therefore, I can assure you that none of the contracts in question were signed or executed unless the funds had been budgeted. On contracts that were prepared by us and which generally contained the pre-audit statement, the only question that was ever asked was whether the money had been budgeted. I believe that to be the important matter, and I was certainly not aware that the pre-audit statement would take on the importance that it apparently now has.

After responding to the petition, respondents moved for judgment on the pleadings. The Administrative Law Judge (the "ALJ") found that "all material matters of fact are admitted in the pleadings and only questions of law remain." Pursuant to N.C. Admin. Code tit. 26, r. 3.0101(1) (June 2002), the ALJ issued a recommended decision on the pleadings, recommending that the Board's decision to terminate petitioner's employment be affirmed.

The ALJ concluded in relevant part:

> The Petitioner contends . . . that "procedures under the State Personnel Act require prior warnings before an individual can be dismissed for job performance related matters." Yet it is clearly

the law of North Carolina that when the job-related misfeasance constitutes a violation of law, it is unacceptable personal conduct for which no such warnings are required. 25 N.C. Admin. Code 1I.2304, 2305; *Fuqua v. Rockingham County Bd. of Social Services*, 125 N.C. App. 66, 71-73, 479 S.E.2d 273 (1997).

Moreover, the very nature of the Petitioner's work-related offenses militate against acceptance of his argument. It is the obvious purpose of the Local Government Budget and Fiscal Control Act to subject local officials such as health directors to enhanced supervision in their contracting decisions and practices through preauditing. When an official ignores these oversight provisions, as the Petitioner in this case did, the results may include unwise and irregular contracts precisely because a statutory safeguard has been evaded. That is, the Petitioner's illegal contracting practices subverted and negated the exact system of supervision, counseling, and corrective discipline in which he now seeks refuge.

(citation omitted).

Pursuant to N.C. Gen. Stat. § 126-37(b1) (2001), the State Personnel Commission (the "SPC") reviewed the ALJ's recommended decision and rendered an advisory decision to the Board. The SPC recommended that the Board reject the ALJ's decision, reinstate petitioner, and issue him a written warning.

The Board voted to reject the SPC's recommendation and to accept the ALJ's recommended decision as its final decision. In its final decision, the Board concluded that the SPC failed to make its advisory decision within the statutorily mandated period, and that, as a consequence, by operation of law, the SPC had adopted the ALJ's recommended decision. In the alternative, the Board concluded that even if it was timely, the SPC's advisory decision was in error for several reasons that the Board specified. We need not address the timeliness of the SPC's decision since, by statute, the SPC's decision is advisory only to the Board, which is empowered to reject the SPC's recommendation as long as the Board "state[s] the specific reasons why it did not adopt the advisory decision." *Id.*

Petitioner then filed a petition for judicial review in the superior court. The court concluded that "the conduct alleged by the respondents in their dismissal letter in respect to the petitioner herein does not, as a matter of law, constitute a 'personal misconduct' violation."

The court reversed the Board's decision and ordered that petitioner be reinstated to his position as Health Director or to a substantially similar position.

The Board appealed the superior court's order to this Court. In an unpublished decision filed on 29 August 2000, this Court remanded the case to the superior court without reaching the merits, because the superior court failed to articulate the standard of review it had applied to each issue raised by the petition for judicial review.

On remand, the superior court changed its decision. The court first determined that the only issues before it for review were legal, and it applied *de novo* review to these issues. Introducing the issue before it, the superior court stated, in part:

> Because Petitioner did not except to this Court's conclusion that his conduct constituted unsatisfactory job performance, there is no question about whether Petitioner should be disciplined for unsatisfactory job performance. Because Petitioner's own Pleadings indicate that he failed to submit certain contracts to the County Finance Officer for pre-audit in accordance with the Fiscal Control Act, there is no question about whether Petitioner violated the law. The only question raised with regard to Petitioner's violation of the Fiscal Control Act is whether, as a matter of law, Petitioner's violation of law also constitutes unacceptable personal conduct under relevant state personnel regulations, thus permitting the Board, in its discretion, to discharge him without further warnings.

The court then concluded in relevant part that our decision in *Fuqua v. Rockingham County Board of Social Services*, 125 N.C. App. 66, 479 S.E.2d 273 (1997), was controlling, and that, under *Fuqua*, the Board "properly characterized Petitioner's failure to enter into contracts in accordance with the Fiscal Control Act as unacceptable personal conduct meriting, in the Board's discretion, immediate dismissal." On 8 December 2000, the court filed its order affirming the Board's final decision. Petitioner then filed a motion for new trial, amendment of judgment and relief from judgment pursuant to Rule 59 and Rule 60 of the North Carolina Rules of Civil Procedure. On 31 July 2001, the superior court filed an order denying the motion. Petitioner is now appealing both orders.

[1] Petitioner first argues that our mandate on remand to the superior court required the court to enter a new order reaching the same

conclusion. We disagree. Because this Court did not reach the merits in the first appeal, the superior court, after reconsideration under the proper standard of review (*de novo*, for issues of law), was free to change its conclusions. Contrary to petitioner's assertion, the superior court's earlier ruling was not the law of the case. *See N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 566, 299 S.E.2d 629, 631 (1983).

[2] Turning to the merits of the case, we must determine if the superior court correctly determined that the Board, in adopting the ALJ's recommended decision, properly rendered judgment on the pleadings. The OAH has adopted the N.C. Rules of Civil Procedure for application in contested case hearings. *See* N.C.A.C. tit. 26, r. 3.0101(1).

Our Supreme Court has explained:

North Carolina's Rule 12(c) is identical to its federal counterpart. The rule's function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit. A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate.

Judgment on the pleadings is a summary procedure and the judgment is final. Therefore, each motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits. The movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment.

The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citations omitted).

Respondents argue that petitioner admits in his pleading that he violated N.C.G.S. § 159-28 by failing to obtain preaudit of certain contracts, and that this violation is, as a matter of law, sufficient to justify petitioner's dismissal without any prior warning. Whether petitioner's violation of N.C.G.S. § 159-28 constitutes personal misconduct justifying his dismissal without warning is an issue of law, which we review *de novo. See Fuqua,* 125 N.C. App. at 70, 479 S.E.2d at 276.

The General Assembly has protected certain state employees by providing that:

> No career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause. In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with a statement in writing setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights. . . . However, an employee may be suspended without warning for causes relating to personal conduct detrimental to State service, pending the giving of written reasons, in order to avoid undue disruption of work or to protect the safety of persons or property or for other serious reasons. . . . The State Personnel Commission may adopt, subject to approval of the Governor, rules that define just cause.

N.C. Gen. Stat. § 126-35(a) (2001). Pursuant to this statute, the State Personnel Commission (the "Commission") has promulgated regulations. One such regulation provides that

> There are two bases for the discipline or dismissal of employees under the statutory standard of "just cause" as set out in G.S. 126-35. These two bases are:
>
> (1) Discipline or dismissal imposed on the basis of unsatisfactory job performance, including grossly inefficient job performance.
>
> (2) Discipline or dismissal imposed on the basis of unacceptable personal conduct.

N.C. Admin. Code tit. 25, r. 1I.2301(b) (June 2002). "Unsatisfactory job performance" is "work related performance that fails to satisfactorily meet job requirements as specified in the relevant job description,

STEEVES v. SCOTLAND CTY. BD. OF HEALTH

[152 N.C. App. 400 (2002)]

work plan or as directed by the management of the work unit or agency." N.C. Admin. Code tit. 25, r. 1I.2302(a) (June 2002). Before an employee can be dismissed for unsatisfactory job performance, he "must first receive at least two prior disciplinary actions: First, one or more written warnings, followed by a warning or other disciplinary action which notifies the employee that failure to make the required performance improvements may result in dismissal." N.C. Admin. Code tit. 25, r. 1I.2302(c) (June 2002).

By contrast to discipline for unsatisfactory job performance, even a career State employee may be immediately dismissed for grossly inefficient job performance or unacceptable personal conduct. *See* N.C. Admin. Code tit. 25, r. 1I.2304(a) (June 2002) ("Employees may be dismissed for a current incident of unacceptable personal conduct."); N.C. Admin. Code tit. 25, r. 1I.2303(b) (June 2002) ("Dismissal on the basis of grossly inefficient job performance is administered in the same manner as for unacceptable personal conduct. Employees may be dismissed on the basis of a current incident of grossly inefficient job performance without any prior disciplinary action."). "Unacceptable personal conduct" is defined by regulation as:

(1) conduct for which no reasonable person should expect to receive prior warning; or

(2) job related conduct which constitutes violation of state or federal law; or

(3) conviction of a felony or an offense involving moral turpitude that is detrimental to or impacts the employee's service to the agency; or

(4) the willful violation of known or written work rules; or

(5) conduct unbecoming an employee that is detrimental to the agency's service; or

(6) the abuse of client(s), patient(s), student(s) or a person(s) over whom the employee has charge or to whom the employee has a responsibility, or of an animal owned or in the custody of the agency; or

(7) falsification of an employment application or other employment documentation; or

(8) insubordination which is the willful failure or refusal to carry out a reasonable order from an authorized supervisor.

Insubordination is considered unacceptable personal conduct for which any level of discipline, including dismissal, may be imposed without prior warning; or

(9) absence from work after all authorized leave credits and benefits have been exhausted.

N.C. Admin. Code tit. 25, r. 1I.2304(b) (June 2002).

Here, petitioner violated the preaudit requirements of N.C.G.S. § 159-28, which provides in relevant part as follows:

If an obligation is evidenced by a contract or agreement requiring the payment of money or by a purchase order for supplies and materials, the contract, agreement, or purchase order shall include on its face a certificate stating that the instrument has been preaudited to assure compliance with this subsection. The certificate, which shall be signed by the finance officer or any deputy finance officer approved for this purpose by the governing board, shall take substantially [the form specified].

N.C.G.S. § 159-28(a). There is no indication in the record that petitioner violated any requirements of this statute other than the preaudit provision.

While the record reflects that petitioner technically violated N.C.G.S. § 159-28, we do not agree that this violation constitutes "unacceptable personal conduct," for which immediate dismissal is permitted under N.C.G.S. § 126-35. This statute, pursuant to which the regulation defining "unacceptable personal conduct" was promulgated, authorizes suspension without warning "in order to avoid undue disruption of work or to protect the safety of persons or property or for other serious reasons." N.C.G.S. § 126-35(a). The Board showed no such grounds in its pleadings. In his petition, petitioner alleged that although he had held his position for seven years, he was unaware of N.C.G.S. § 159-28(a) or the preaudit requirement and had never received training in its application. Nevertheless, he explained that he only entered into contracts that "were validly budgeted and had been approved during the budget process." Further, "none of the contracts in question were signed or executed unless the funds had been budgeted." Respondents did not allege that petitioner's omission of the preaudit certificate on the few contracts noted was likely to produce disruption of work, threat to persons or property, or any other "serious" effect that required immediate action.

Subsection (b)(1) of N.C.A.C. tit. 25, r. 1I.2304 indicates that unacceptable personal conduct comprises "conduct for which no reasonable person should expect to receive prior warning." With the possible exception of subsection (b)(2), all the other subsections within section (b) are examples of such conduct. For this regulation to be consistent with its enabling legislation (N.C.G.S. § 126-35(a)), we conclude that the violation of state or federal law contemplated in subsection (b)(2) of the regulation must be a violation of law which threatens immediate disruption of work or safety of persons or property, or for which a reasonable person would not expect to receive a warning prior to dismissal. We do not believe that the legislature intended to include as "unacceptable personal conduct" an administrative requirement of which no one informed petitioner during his training or during the seven years he performed his duties as Health Director.

Respondents cite *Fuqua v. Rockingham County Board of Social Services* in support of their contention that a violation of N.C.G.S. § 159-28 is sufficient to justify petitioner's dismissal without warning. We do not agree that *Fuqua* is controlling. In *Fuqua*, the board dismissed the petitioner on the grounds that he violated a state statute and that he willfully violated work rules. *See Fuqua*, 125 N.C. App. at 71-72, 479 S.E.2d at 276-77. We held that there was substantial evidence in the record to justify the board's findings that the petitioner had violated state law and had willfully violated known work rules and that such violations constituted personal misconduct. *See id.* at 73, 479 S.E.2d at 277. There, we were not called upon to decide whether an unwitting violation of state law resulting in no apparent detriment to the agency is sufficient to justify dismissal for personal misconduct. Indeed, the evidence in *Fuqua* demonstrated that the petitioner intentionally violated state law in addition to his willful violation of known work rules. *See id.* at 69-73, 479 S.E.2d at 275-77. Even in light of this evidence, however, this Court reluctantly reached its conclusion that the petitioner's conduct constituted unacceptable personal conduct warranting immediate dismissal:

In view of [his] diligent service to the Department for some twenty-five years, a less strict penalty might have been imposed. However, while we might have been more leniently inclined if sitting as the Board, we cannot say the decision to dismiss petitioner based upon his willful failure to follow county and state purchasing procedures may fairly be characterized as "patently in bad faith" or "fail[ing] to indicate any course of reasoning."

*Id.* at 74, 479 S.E.2d at 278 (quoting *Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989)) (second alteration in original).

Here, taking the facts alleged in petitioner's pleading as true, we conclude that petitioner's violation of N.C.G.S. § 159-28 did not, as a matter of law, constitute unacceptable personal conduct sufficient to warrant dismissal without prior warning. Thus, the Board erred in granting judgment on the pleadings to uphold petitioner's dismissal. Accordingly, the superior court's order affirming the decision of the Board is reversed and this matter is remanded to that court for further remand to the Board for reversal of its judgment on the pleadings. In light of this disposition, we need not and do not consider petitioner's remaining assignments of error, including his appeal of the superior court's order denying his motion for new trial, amendment of judgment and relief from judgment, which is now moot.

Order affirming decision of Scotland County Board of Health reversed.

Remanded.

Judges WYNN and CAMPBELL concur.