Finkel v. Palm Park, Inc., 2018 NCBC 111.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF WAKE | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>17 CVS 14515 |

DAVID FINKEL, HD FUNDING, INC., and HORIZON FUNDING, LLC,

        Plaintiff,

    v.

PALM PARK, INC., NATHAN BYELICK, MARGARET BYELICK, OAK CREST PROPERTY MANAGEMENT, INC., and THE OAKS AT NORTHGATE, LLC,

        Defendants.

**ORDER AND OPINION ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFFS' RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS**

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), N.C. Gen. Stat. § 1A-1 (hereinafter, the General Statutes will be referred to as "G.S." and the Rules of Civil Procedure will be referred to as "Rule(s)"). ("Rule 12(b)(1) Motion", ECF No. 48.) Also before the Court are Palm Park, Inc. and Oak Crest Property Management, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(6) ("Rule 12(b)(6) Motion", ECF No. 36), and Plaintiffs' Renewed Motion for Judgment on the Pleadings pursuant to Rule 12(c). ("Rule 12(c) Motion", ECF No. 44; collectively, the Rule 12(b)(1), Rule 12(b)(2), and Rule 12(c) Motions are referred to as the "Motions".)

Having considered the Motions, the briefs filed in support of and in opposition to the Motions, the affidavits submitted, the arguments of counsel at the hearing, and

other appropriate matters of record, the Court concludes that: the Rule 12(b)(1) Motion should be GRANTED, in part, and DENIED, in part; the Rule 12(b)(6) Motion should be DENIED; and the Rule 12(c) Motion should be DENIED.

*Smith Moore Leatherwood LLP, by Mark A. Finkelstein, Esq. for Plaintiffs David Finkel, HD Funding, Inc., and Horizon Funding, LLC.*

*Parry Tyndall White, by James C. White, Esq. for Defendants Palm Park, Inc., Nathan Byelick, Margaret Byelick, Oak Crest Property Management, Inc., and The Oaks at Northgate, LLC.*

McGuire, Judge.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Parties

1. Plaintiff David Finkel ("Finkel") is a resident of Wyoming and a member and the manager of Plaintiff Horizon Funding, LLC ("Horizon"), a Wyoming limited liability company. Finkel also is a shareholder and the president of Plaintiff HD Funding, Inc. ("HD Funding"). (First Am. Compl., ECF No. 31, at ¶¶ 1–2, "FAC".)

2. Defendant Nathan Byelick ("Nathan") is a citizen and resident of Chatham County, North Carolina, and is the president of Oak Crest Property Management, Inc. ("Oak Crest"). Oak Crest is a North Carolina corporation with its principal place of business in Wake County. Nathan and his wife, Defendant Margaret Byelick ("Margaret"), are the sole shareholders of Oak Crest (collectively, Nathan and Margaret are referred to as the "Byelicks").

### B. Factual Background

3. Until sometime in 2013, Horizon was a 37.5% owner and member, and Oak Crest was a 62.5% owner and member, of Defendant The Oaks at Northgate,

LLC ("TONG"). TONG is the sole shareholder of Defendant Palm Park, Inc. ("Palm Park"), a North Carolina corporation which owns property located in Wake County. Palm Park is the main asset of TONG. (ECF No. 31, at ¶ 4.)

4. Finkel, on behalf of Horizon, and Nathan, on behalf of Oak Crest, entered into a written Operating Agreement for TONG ("TONG OA"). (TONG OA, ECF No. 11, Ex. 1.) Nathan and Margaret are listed as the managers of TONG in the TONG OA. (*Id*. at p. 36; ECF No. 31, at ¶¶ 5, 6.) Plaintiffs also allege that "[u]ntil Margaret [ ] amended the annual report of TONG on December 15, 2017, Oak Crest was listed as a manager of TONG on the [S]ecretary of [S]tate's web site and held itself out to Plaintiffs as a manager" of TONG. (ECF No. 31, at ¶ 7.) Pursuant to section 3.4(c) of the TONG OA, the managers owe fiduciary duties to the company and its members. (ECF No. 11, Ex. 1, at p. 9.)

5. The TONG OA provides procedures for transferring membership interests and the effects of failing to follow those procedures. Article 11 of the TONG OA governs how membership interests may be transferred. (*Id*. at pp. 21–23.) The TONG OA requires a transferor-member to get written approval from the other members before transferring a membership interest. The transferor-member also must provide TONG with an opinion of counsel that the proposed transfer will not violate any federal or state securities laws and will not jeopardize TONG's partnership tax treatment. (*Id*. at p. 22.) The TONG OA also provides that if the transfer is not made properly it "shall be deemed invalid, null and void, and of no force and effect." (*Id*.)

6.	Once the interest is transferred, the transferee must be admitted as a member of TONG by obtaining the written consent of TONG's members and managers, accepting the terms of the TONG OA, and paying any costs incurred in making them a member. (*Id.* at p. 23.) Until the transferee is admitted as a member "the transferee of a Membership Interest shall not be entitled to any rights, powers, or privileges of a Member, except that the transferee shall be entitled to receive the distributions and allocations to which the Member would be entitled." (*Id.* at p. 22.)

7.	In 2013, Finkel transferred Horizon's membership interest in TONG to HD Funding. It is not clear by what means Finkel made the transfer (by sale, assignment, etc.), but the parties dispute whether the transfer was done properly and was effective. Plaintiffs contend that the transfer was merely a "re-titling" of Horizon's interest and not a transfer as contemplated by the TONG OA, that the transfer was done with the understanding and agreement of Nathan, and that Nathan and TONG treated HD Funding as a member after the transfer. (Finkel Aff., ECF No. 52, at ¶¶ 20–21, 25.) On the other hand, Defendants contend that the transfer was not in compliance with the TONG OA because Horizon did not obtain the consent of Oak Crest prior to transferring the interest, and HD Funding did not obtain the written agreement of TONG's members and managers to be admitted as a member of TONG. Defendants contend that, at most, HD Funding became an interest owner with rights to distributions, but not a member with full membership rights. (ECF No. 50, at ¶¶ 6–9.)

8. Plaintiffs allege that Nathan and Margaret have breached the fiduciary duties they owe to HD Funding by "withholding documents and information and seeking to take advantage of any transaction consolidating ownership and control of TONG," and by "(1) taking compensation from TONG in violation of Paragraph 3.8 of the [TONG OA], (2) owning property in competition with TONG in violation of Paragraph 3.11 of the [TONG OA], (3) borrowing or requesting funds without the written consent of [HD] Funding in violation of Paragraph 3.3(h) and (i) [sic], (4) purchasing and leasing real or personal property without the written consent of [HD] Funding in violation of Paragraph 3.3(j), (5) executing instruments and documents without the written consent of [HD] Funding in violation of Paragraph 3.3(k), (6) entering into other contracts with a value of over $20,000.00 without the written consent of [HD] Funding in violation of Paragraph 3.3(l)[,] and failing to meet their obligations under Paragraph 3.4 of the [TONG OA]." (ECF No. 31, at ¶¶ 40–41.)

9. Plaintiffs also allege that Finkel and Nathan "have a special relationship of trust and confidence" and that Nathan owes Finkel a fiduciary duty in Finkel's individual capacity. (*Id.* at ¶¶ 11–12.)

10. Finkel and Nathan are no longer communicating and are deadlocked in the management of TONG. In addition, Nathan has refused to provide Finkel financial information about TONG. (*Id.* at ¶¶ 22–25.) The parties seek to have TONG valued for purposes of permitting one party to buy out the other.

C. Procedural History

11. Plaintiffs filed the FAC on February 23, 2018. The FAC asserts claims for: (1) the valuation and sale of TONG pursuant to G.S. § 57D-6-03(d) in lieu of dissolution; (2) in the alternative, dissolution of TONG; (3) an order compelling TONG to provide access to information and records pursuant to § 57D-3-04; and (4) breach of fiduciary duty by Nathan, Margaret, and Oak Crest. (*Id.* at ¶¶ 14–43.)

12. On March 26, 2018, Palm Park and Oak Crest filed the Rule 12(b)(6) Motion with an accompanying Brief in Support. (Defs.' Br. Supp. Rule 12(b)(6) Mot., ECF No. 37.) On April 6, 2018, Plaintiffs filed an opposition brief. (Pls.' Br. Opp. Rule 12(b)(6) Mot., ECF No. 42.) Defendants did not file a reply.

13. On April 13, 2018, Plaintiffs filed the Rule 12(c) Motion accompanied by a Brief in Support. (Pls.' Renewed Rule 12(c) Mot., ECF No. 44; Pls.' Br. Supp. Rule 12(c) Mot., ECF No. 45.) On May 21, 2018, Defendants jointly filed a Response to Plaintiffs' Rule 12(c) Motion. (Defs.' Br. Opp. Rule 12(c) Mot., ECF No. 47.) Plaintiffs did not file a reply.

14. On May 29, 2018, Defendants filed the Rule 12(b)(1) Motion along with a brief in support. (Defs.' Br. Supp. Mot. Dis., ECF No. 49.) On June 11, 2018, Plaintiffs filed a brief in opposition to the Rule 12(b)(1) Motion. (Pls.' Br. Opp. Mot. Dis., ECF No. 51.) On June 25, 2018, Defendants filed a reply brief. (Defs.' Reply Supp. Mot. Dis., ECF No. 53.)

15. The Motions have been fully briefed, the Court has held a hearing, the Court will first analyze the Rule 12(b)(1) Motion, followed by the Rule 12(b)(6) Motion, and finally the Rule 12(c) Motion.

II. ANALYSIS

A. Rule 12(b)(1) Motion

16. Defendants move to dismiss all of Plaintiffs' claims against all Defendants pursuant to Rule 12(b)(1) on the grounds that none of the Plaintiffs are members of TONG and therefore lack standing to pursue the claims.

17. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (citations and quotations omitted). "Standing 'refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter.'" *Woodring v. Swieter*, 180 N.C. App. 362, 366, 637 S.E.2d 269, 274 (2006) (quoting *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 57). North Carolina courts use the term 'standing' "to refer generally to a party's right to have a court decide the merits of a dispute." *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52. Standing is assessed at the time the complaint is filed. *Messer v. Town of Chapel Hill*, 346 N.C. 259, 260, 485 S.E.2d 269, 270 (1997).

18. In considering a motion to dismiss for lack of standing, the Court must "view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644,

669 S.E.2d 279, 283 (2008). "'[M]atters outside the pleadings . . . may be considered and weighed by the court in determining the existence of jurisdiction over the subject matter.'" *State v. Seneca-Cayuga Tobacco Co.*, 197 N.C. App. 176, 181, 676 S.E.2d 579, 583 (2009) (quoting *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978)). The burden is on the party invoking jurisdiction to establish standing. *Marriot v. Chatham Cty.*, 187 N.C. App. 491, 494, 654 S.E.2d 13, 16 (2007). The Court will only grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to a judgment as a matter of law." *Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at *10 (N.C. Super. Ct. Apr. 20, 2011) (citing *Southstar Funding, L.L.C. v. Warrant, Perry & Anthony, P.L.L.C.*, 445 F. Supp. 2d 583, 584 (E.D.N.C. 2006)).

i. *Finkel does not have standing to sue as a member of TONG.*

19. Preliminarily, Finkel is not a member of TONG and lacks standing to bring the first claim for relief for fair valuation, the second claim for judicial dissolution, and the third claim for relief for enforcement of member's rights to information. *See* G.S. § 57D-6-03 ("In any proceeding brought *by a member*. . . ." (emphasis added)); *In re Klingerman*, 388 B.R. 677, 678 (Bankr. E.D.N.C. 2008) ("[T]he North Carolina statutes provide for judicial dissolution only where a proceeding is brought by the Attorney General, a member, or the limited liability company itself."); G.S. § 57D-3-04 (information rights belong to the members of the company). Accordingly, to the extent the Rule 12(b)(1) Motion seeks dismissal of claims Finkel is attempting to bring as a member of TONG for fair valuation, judicial

dissolution, or for enforcement of member's rights to information, the motion should be GRANTED and those claims should be DISMISSED.

20.     Similarly, to the extent Finkel attempts to state a claim for breach of fiduciary duty based on an alleged status as a member of TONG, the Rule 12(b)(1) Motion should be GRANTED, and that claim should be DISMISSED.

21.     To the extent Finkel attempts to allege a claim for breach of a fiduciary duty owed by Nathan to Finkel as an individual arising from "a special relationship of trust and confidence" (ECF No. 31, at ¶¶ 11–12, 39), and not based on Finkel being a member of TONG, Defendants have not argued for dismissal of this claim. Accordingly, to the extent the Rule 12(b)(1) Motion seeks dismissal of Finkel's claim for breach of a fiduciary duty owed to Finkel by Nathan as an individual arising from "a special relationship of trust and confidence," the motion should be DENIED.

ii.     *Plaintiffs have created an issue of fact regarding whether Nathan and TONG should be estopped from denying that HD Funding is a member of TONG.*

22.     Plaintiffs allege that HD Funding is currently a member of TONG as a result of Horizon's transfer of membership interests to HD Funding. Defendants contend that Horizon failed to properly transfer full membership interests to HD Funding because Horizon did not get written consent from Oak Crest to the transfer as required by the TONG OA. (ECF No. 49, at pp. 3–4.) Alternatively, Defendants argue that, even if Horizon's transfer of its interest in TONG to HD Funding was effective, HD Funding failed to obtain the written consent of TONG's members and managers that is required to become a member. Defendants contend that this leaves

HD Funding as merely an economic interest holder entitled to distributions, and not a member with full rights to bring claims as a member. (*Id*. at pp. 4–5.) Accordingly, Defendants argue, all of the claims must be dismissed. (*Id*. at p. 6.)

23.     Plaintiffs concede that Horizon did not comply with the letter of the TONG OA in transferring its interest to HD Funding. Instead, Plaintiffs first argue that the transfer was a mere "re-titling" of Horizon's membership interest in TONG in the name of HD Funding in which Nathan acquiesced and that did not require compliance with the procedures in the TONG OA. (ECF No. 52, at ¶¶ 19–22; ECF No. 51, at pp. 3–5.) The Court finds this argument unpersuasive.

24.     The FAC identifies Horizon and HD Funding as separate parties and legal entities, and does not allege that Horizon merely changed its name and continued to operate as HD Funding. The TONG OA provides that a transfer "includes a sale, assignment, gift, pledge, exchange, or other disposition." (ECF No. 11, at p. 21.) The evidence before the Court shows that in 2013 Horizon's ownership interest in TONG was transferred, in one form or another, to HD Funding. (ECF No. 50, Exh. A.) The Court concludes that Horizon's transfer of its membership interest was a transfer within the meaning of the TONG OA.

25.     Plaintiffs next contend that Defendants should be equitably estopped from denying that HD Funding is a member of TONG because Nathan and TONG acquiesced in the transfer at the time it was made, have treated HD Funding as a member following the transfer of interest, and have raised the issue of whether

Horizon properly transferred its interest for the first time in this lawsuit. (ECF No. 51, at pp. 6–9.)

26. Generally, the doctrine of equitable estoppel applies

> when anyone, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

*Whitacre Partnership v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (N.C., 2004) (quotation marks omitted). The essential elements of equitable estoppel are: (1) words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have knowledge, either actual or implied, that the representations were untrue; (3) the truth of the representations must be unknown to the party claiming the benefit of the estoppel; (4) the party estopped must intend that his conduct or representations will be acted on; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel; (6) the party claiming the benefit of the estoppel must have acted based on the representation such that he would be prejudiced if the first party be permitted to deny the truth thereof. *See, e.g., Yancey v. Watkins*, 2 N.C. App. 672, 674–75, 163 S.E.2d 625, 626–27 (1968).

27. In support of their claim of equitable estoppel, Plaintiffs point to evidence that: (1) Nathan was aware of the manner in which Finkel transferred Horizon's interest to HD Funding and led Plaintiffs to believe that the transfer was

done properly (ECF No. 52, at ¶ 20); (2) TONG sent HD Funding a Form K-1 showing that HD Funding held an ownership interest in TONG for tax year 2013 (*Id*. at ¶ 25); (3) Nathan referred to Finkel as a "member" of TONG after the transfer, including in a July 2017 email discussing the potential purchase of HD Funding's interest in TONG (*Id*. at ¶ 25, Ex. D) and; (4) in 2017, Finkel guaranteed a loan taken out by Palm Park in his individual capacity. Finkel would not have guaranteed the loan if he had not believed he was a member. (*Id*. at ¶¶ 27–29, Ex. E.) Finally, Finkel claims he brought this lawsuit based on Nathan's representations and conduct that led Finkel to believe HD Funding was a member of TONG. (*Id*. at ¶ 30.)

28.   The Court concludes that Plaintiffs have, at this stage of the case, presented sufficient evidence to support their theory that Defendants should be estopped from claiming that Horizon did not properly transfer its interest to HD Funding and that HD Funding is merely an economic interest holder in TONG. The evidence creates at least a colorable claim that Nathan and TONG engaged in conduct and/or made representations to HD Funding and Finkel both at the time of, and after, Horizon's transfer of its interest upon which they reasonably relied in forming the belief that HD Funding had stepped into Horizon's shoes and was a full member of TONG. Plaintiffs also have presented evidence that Finkel and HD Funding took certain actions in reliance on the belief HD Funding was a member of TONG. On the other hand, Defendants do not claim, let alone present evidence, that Nathan or TONG raised a question as to the propriety of Horizon's transfer to HD Funding prior to becoming involved in this lawsuit. Therefore, to the extent the Rule 12(b)(1)

Motion seeks dismissal of HD Funding's claims on the ground of lack of standing, the motion should be DENIED.

    *iii.*       *Defendants admit Horizon was a member of TONG at the time Plaintiffs filed this lawsuit.*

29.     Defendants also contend that Horizon lacks standing because it was not a member of TONG at the time the lawsuit was filed. (ECF No. 49, at pp. 3–4.) Defendants contend that Horizon lacks standing to bring any claim because "Horizon was a member of TONG only until sometime in 2013" when it transferred its interests to HD Funding. (ECF No. 49, at p. 1 (introduction ¶).) However, this position fails because TONG and the Byelicks admitted in their respective answers to the FAC that Horizon was a member of TONG at the time it brought this lawsuit. (TONG's Answ. FAC, ECF No. 34, at ¶ 2; Byelicks' Answ. FAC, ECF No. 35, at ¶ 2.) Therefore, to the extent the Rule 12(b)(1) Motion seeks dismissal of Horizon's claims on the ground of lack of standing, the motion should be DENIED.[1]

B. Rule 12(b)(6) Motion

30.     Defendants Palm Park and Oak Crest move for dismissal on the grounds that the FAC does not state claims against them.

31.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as

---

[1] Overlooking their admissions, Defendants raise for the first time in their reply brief an argument that Horizon somehow lacks standing because the 2013 transfer of interest created a "buy-sell event" under Article 13 of the TONG OA. (ECF No. 53, at pp. 7–8.) Defendants claim that on June 25, 2018, they notified Horizon that it was invoking its rights under the buy-sell provisions. (*Id.* at p.7.) Given TONG's and the Byelicks' admissions, the Court need not address at this time the question of whether buy-sell rights under the TONG OA were triggered.

true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Our appellate courts frequently reaffirm that North Carolina is a notice pleading state. *See, e.g., Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 762 S.E.2d 477, 486 (2014)). "Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the res judicata, and to show the type of case brought." *Id.*

32. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted). The Court construes the complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

*Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005).

33.     The Court will consider the claims as alleged against Palm Park separately from those alleged against Oak Crest.

*i.     Palm Park is a proper party.*

34.     The FAC makes no substantive allegations regarding and seeks no affirmative relief against Palm Park.  Plaintiffs argue that Palm Park is a proper party, rather than a necessary party, because Palm Park is the main asset of TONG, Palm Park's operations may be impacted by the outcome of this lawsuit, and at a minimum, it may be called upon to provide its financial records in this lawsuit.  (ECF No. 31, at pp. 2–6.)

35.     One "whose interest may be affected by a decree, but whose presence is not essential in order for the court to adjudicate the rights of others" is a "proper" party, but not a necessary party.  *Crosrol Carding Devs., Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 452, 183 S.E.2d 834, 837 (1971).  Unlike necessary parties, a proper party may, but is not required to, be joined.  *Id.* at 451.  "Whether proper parties will be ordered joined rests within the sound discretion of the trial court."  *Long v. City of Charlotte*, 306 N.C. 187, 212, 293 S.E.2d 101, 117 (1982).

36.     The Court concludes, in its discretion, that Palm Park should remain in the case as a proper party.  Palm Park is currently represented by the same counsel as the other Defendants and is participating in the suit in conjunction with Defendants.  Palm Park may also be necessary for the final disposition of the action

or enforcement of a judgment. Therefore, Palm Park's Rule 12(b)(6) Motion should be DENIED.

   ii.      *Oak Crest is a proper party.*

37.      Oak Crest holds a 62.5% membership interest in TONG, and Plaintiffs allege Oak Crest was listed in TONG's filings with the North Carolina Secretary of State, and held itself out, as a manager of TONG. (ECF No. 31, at ¶¶ 7, 20.) Plaintiffs also allege that Oak Crest "failed to act openly and honestly" in its role as manager, apparently in breach of fiduciary duties. (*Id.* at ¶¶ 42–43.) Oak Crest argues that Oak Crest's inclusion in paragraphs 42 and 43 of the FAC "appears to be a typo," (ECF No. 37, at p. 4), but provides no basis for this contention, particularly in light of Plaintiffs' allegations that Oak Crest held itself out as a manager. Accordingly, the Court proceeds with its analysis taking as true that Oak Crest was a manager of TONG.

38.      Plaintiffs' first claim for relief is for fair valuation and sale of TONG, and Plaintiffs' second claim for relief is for dissolution of TONG. Oak Crest argues that TONG is the only Defendant against whom Plaintiffs can allege their first and second claims for relief. (ECF No. 37, at pp. 2–3.) Pursuant to G.S. § 57D-6-03(a), "A proceeding . . . to dissolve an LLC is to be brought against the LLC." Plaintiff "may not join an interest owner or company official as a party to the proceeding unless and to the extent relief is sought against the interest owner or company official for that person's own actions." *Id.*

39. Oak Crest is alleged to be a manager of TONG, so the general rule in G.S. § 57D-6-03(a) would appear to apply. However, Plaintiffs make a claim against Oak Crest for breach of fiduciary duties. (ECF No. 31, at ¶¶ 42–43.) Therefore, because Plaintiffs seek relief against Oak Crest for Oak Crest's own actions, Oak Crest's Rule 12(b)(6) Motion to dismiss the first and second claims should be DENIED.

40. While Plaintiffs' third claim for judicial enforcement of a member's right to information under G.S. § 57D-3-04 could be brought exclusively against TONG, as an alleged manager of TONG, Oak Crest is at least a proper party that would be able to carry into effect an order requiring production of such records. G.S. § 57D-3-04(c). Accordingly, Oak Crest's Rule 12(b)(6) Motion to dismiss the third claim should be DENIED.

41. Finally, Plaintiffs' fourth claim for relief is for breach of fiduciary duty by the managers of TONG. Oak Crest is alleged to be a manager of TONG and is alleged to have breached its fiduciary duties owed to members of TONG. The Court notes that, as Defendants contend, it is possible that the evidence will show that Oak Crest was not actually a manager of TONG. At this stage, however, the allegations are sufficient for Plaintiffs' breach of fiduciary duty claim to proceed against Oak Crest. Oak Crest's Rule 12(b)(6) Motion to dismiss Plaintiffs' fourth claim should be DENIED.

C. Rule 12(c) Motion

42.     Plaintiffs ask the Court to enter judgment on the pleadings by (1) "determining that the [C]ourt should provide procedures for determining fair value" of TONG; and (2) providing procedures to determine TONG's fair value. (ECF No. 44, at pp. 1–2.) Plaintiffs suggest that the Court schedule a hearing to establish the procedure for determining TONG's fair value, and ignore the relevant procedure for valuation listed in the TONG OA. (ECF No. 44, at p. 8.) Defendants argue in response that it is too early in the process to determine the valuation method of TONG, as Plaintiffs' claim for judicial dissolution has not yet been decided.

43.     Under a motion for judgment on the pleadings

> [t]he trial court may consider only the pleadings and exhibits which are attached and incorporated into the pleadings . . . . No evidence is to be heard, and the trial judge is not to consider statements of fact in the briefs of the parties or the testimony of allegations by the parties in different proceedings.

*Davis v. Durham Mental Health/Dev. Disabilities/Subst. Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004) (internal quotations and citations omitted). "The purpose of Rule 12(c) is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit. Judgment on the pleadings is proper when all of the material issues of fact are admitted in the pleadings, and only questions of law remain." *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 390, 617 S.E.2d 306, 309 (2005) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974)) (internal quotations and citations omitted). "When the pleadings do not resolve *all the factual issues*, judgment on the pleadings is generally inappropriate."

*Steeves v. Scot. Cty. Bd. of Health*, 152 N.C. App. 400, 405, 567 S.E.2d 817, 820 (2002) (emphasis added).

44.     Plaintiffs argue that "both sides seek to have the Court establish a procedure" for the valuation of TONG, so the Court can and should do so pursuant to Rule 12(c) at this time by conducting a separate hearing, presumably so the parties can present arguments for various differing valuation methods. Defendants argue in response that there are facts in dispute, including whether dissolution is appropriate at all, and the effect of the Buy-Sell provision of the Operating Agreement on any attempt to value a member's interest in TONG. (ECF No. 47, at p. 2.)

45.     The Court agrees with Defendants that there are facts in dispute at this time, including the appropriateness of dissolution and the effect of the TONG OA and its recommended valuation procedure, such that an immediate determination of the proper valuation method of TONG pursuant to Rule 12(c) is inappropriate. The Court recognizes that it will likely eventually have to engage in the determination Plaintiffs seek, but the pleadings are not sufficient to establish that Defendants' counterclaims are baseless or without merit, and that Plaintiffs are entitled to their requested valuation method at this time.

46.     Accordingly, the Rule 12(c) Motion should be DENIED.

THEREFORE, IT IS ORDERED that the pending Motions are disposed of as follows:

1. The Rule 12(b)(1) Motion, to the extent it seeks dismissal of claims brought by Plaintiff David Finkel for lack of standing as a member of TONG, is GRANTED.

2. The Rule 12(b)(1) Motion, to the extent it seeks dismissal of Finkel's claim for breach of a fiduciary duty owed to Finkel by Nathan as an individual arising from "a special relationship of trust and confidence," and not as a member of TONG, is DENIED.

3. The Rule 12(b)(1) Motion, to the extent it seeks dismissal of the claims raised by HD Funding and Horizon, is DENIED.

4. The Rule 12(b)(6) Motion is DENIED.

5. The Rule 12(c) Motion is DENIED.

SO ORDERED, this 24th day of October, 2018.

    /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases