MARSHA A. EARLY, Petitioner v. COUNTY OF DURHAM DEPARTMENT
OF SOCIAL SERVICES, Respondent

No. COA04-35

(Filed 16 August 2005)

**1. Public Officers and Employees— dismissal—just cause requirement—permanent employee**

The applicability of the just cause requirement for termination to local government employees is determined by the permanency of employment and not by months of service. The language of N.C.G.S. § 126-5(a)(2) is straightforward in subjecting all employees of certain types of local entities to the provisions of the SPA.

**2. Public Officers and Employees— termination—contested case petition—timeliness**

DSS's motion to dismiss a terminated employee's contested case petition as untimely was properly denied because DSS did not provide the employee with the notice required by N.C.G.S. § 150B-23(f). The letter sent by DSS simply reiterated facts without reaching any conclusions, expressed sympathy for plaintiff's medical condition, and could be read as leaving open the possibility of further negotiation.

**3. Public Officers and Employees— dismissal—judicial review—standards**

The decision of the State Personnel Commission is advisory to the local appointing authority in appeals involving local government employees subject to the State Personnel Act. The local appointing authority's final decision is subject to judicial review, with the trial court acting in the capacity of an appellate court. The trial court here correctly first addressed the inquiries in N.C.G.S. § 150B-51(a); as to grounds for reversal under N.C.G.S. § 150B-51(b), some appellate inquiries receive de novo review and some are under the whole record test.

**4. Administrative Law— dismissed DSS employee—standard of review—remand not required**

The standard of review for a dismissed DSS employee involved both the whole record test and de novo review. However, even if the trial court did not apply the precise analysis required, the case need not be remanded if it can be reasonably

determined from the record whether the dismissed employee's asserted grounds for challenging the agency's final decision warranted reversal.

### 5. Public Officers and Employees— dismissal of DSS employee—final decision a DSS responsibility—just cause not raised on appeal

The trial court's reversal of a DSS decision finding just cause to terminate an employee was upheld. Although DSS argued that the matter should be remanded because the Administrative Law Judge dismissed the just cause claim for lack of jurisdiction rather than addressing it on the merits, the final decision was for DSS rather than the ALJ. Moreover, DSS did not argue on appeal that just cause was established by the findings on which it relied.

### 6. Public Officers and Employees— dismissed DSS employee—back pay

N.C.G.S. § 126-37 indicates that the General Assembly intended that employees of local appointing authorities be treated as State employees and be able to seek back pay upon prevailing in a claim under the State Personnel Act. The trial court's determination that a dismissed DSS employee should receive back pay was affirmed.

### 7. Costs— attorney fees—dismissed local employee—authority to award

A superior court is authorized by N.C.G.S. § 6-19.1 to award attorney fees to an employee of a county Department of Social Services who has prevailed under the State Personnel Act.

Appeal by respondent from order entered 11 July 2003 by Judge Evelyn Werth Hill in Wake County Superior Court. Heard in the Court of Appeals 15 September 2004.

*Patrice Walker for petitioner-appellee.*

*County Attorney S. C. Kitchen, by Deputy County Attorney Lowell L. Siler, for respondent-appellant.*

GEER, Judge.

Respondent Durham County Department of Social Services ("DSS"), appeals from the decision of the trial court upon a petition for judicial review, holding that DSS terminated the employment of

petitioner Marsha A. Early without just cause. DSS argues on appeal: (1) that Early was not entitled to file a contested case alleging a lack of just cause, (2) that Early's contested case petition was not timely filed, (3) that this Court should order further proceedings on the just cause claim, and (4) that, in any event, a local governmental employee is not entitled to recover back pay or attorneys' fees. We hold that the trial court had subject matter jurisdiction over Early's just cause claim and that the contested case was timely. Further, we hold that the issue of just cause has been fully litigated and determined and DSS has offered no justification for additional proceedings or for reversal of the trial court's conclusion that DSS lacked just cause for terminating Early's employment. Finally, because Early prevailed below, we hold that the trial court could properly decide to award her back pay and attorneys' fees. Accordingly, we affirm.

## Facts

Marsha Early began work on 3 January 2000 as a Child Support Agent II in the Establishment Unit of the DSS Child Support Department. Her immediate supervisor was Laurie Hasty, who in turn reported to Jerome Brown, the Program Manager. Approximately three months after she began work, on 4 April 2000, Early underwent emergency surgery. Early and her husband called Hasty, notified her why Early would not be reporting to work, and requested leave without pay ("LWOP") for the time necessary to recover from the surgery. On 6 April 2000, Early submitted the required paperwork to Hasty. On 17 April 2000, DSS approved LWOP for the period 4 April 2000 through 4 May 2000. Subsequently, Early requested and was granted an extension until 22 May 2000. She received additional time off through 29 May 2000 because of the death of her father.

On 4 August 2000, Early was involved in a car accident on her way to work. On 17 October 2000, a doctor advised Early that she required back surgery and that she would need approximately eight to twelve weeks to recover from the surgery. Early testified that her doctor gave her the choice of having the surgery on the following day, 18 October 2000, or at a later date of Early's choosing. Early telephoned Hasty, told her of the doctor's diagnosis, and asked Hasty if she would grant Early leave so that she could have the surgery the next day. Hasty replied, "no problem." Based on Hasty's response, Early elected to have the surgery on 18 October 2000. Early testified that she would not have chosen to have the surgery then if Hasty had not verbally approved the leave request.

On the morning of 18 October 2000, Hasty faxed the appropriate LWOP forms to Early's doctor. Early underwent her surgery on the same day. On 19 October 2000, Early's doctor completed the LWOP forms and Early's husband faxed the forms to three different fax numbers provided by Hasty. On the forms, the doctor indicated that it would be necessary for Early to be absent from work for approximately eight to twelve weeks. On 23 October 2000, Early's husband also hand-delivered the completed forms to Hasty. DSS did not indicate to Early or her husband any problem with the leave request. Based on her doctor's projection, Early anticipated returning to work on 17 January 2001.

In a pleading filed with the Office of Administrative Hearings, DSS stated: "Although [DSS] initially granted [Early's] LWOP through January 17, [Early's] absence was creating a hardship on the unit such that it was not in the best interest of [DSS] for [Early] to remain on LWOP." Approximately one to two weeks after Early's communications with Hasty, Hasty met with Brown to discuss the potential impact of Early's absence. Hasty told Brown that her unit could only handle Early's caseload through 13 December 2000 without there being a hardship on her unit. Brown and Hasty then recommended to DSS' director, Daniel C. Hudgins, that Early's LWOP extend only until 13 December 2000.

Accordingly, on 14 November 2000, Hudgins mailed Early a letter stating that her LWOP would last only until 13 December 2000. Specifically, the letter stated: "You are on Leave Without Pay due to a medical condition effective October 19, 2000. . . . Since you are not eligible for Family Medical Leave, you will be expected to return to work full-time no later than December 13, 2000. You must bring a Fitness for Duty Statement from your medical doctor indicating that you are able to work with no limitations." The letter did not state what would happen if Early was unable to obtain a "Fitness for Duty Statement" from her doctor indicating no work limitations as of 13 December 2000.

Early waited to reply to the letter until after her post-operation appointment with her doctor in early December. At that doctor's visit, Early's doctor recommended that she not return to work on 13 December 2000 in order to ensure that her spinal alignment remained intact. The doctor faxed a letter to DSS indicating that Early was still under his care and would be able to return to work on 29 January 2001, but that, after that date, she would have two restrictions lasting

for an additional four weeks: (1) no prolonged bending, stooping, standing, or sitting, and (2) no lifting of more than 10 pounds.

On 13 December 2000, Early called Hasty at work and left a message on her voice mail, stating that she was calling to see if Hasty had received the doctor's letter. Hasty returned Early's call that day, confirmed that she had received the doctor's fax, and stated that she was placing it in Early's personnel file. During the course of this conversation with plaintiff, Hasty made no comment suggesting that plaintiff had exhausted her LWOP or that her employment was at risk.

Nevertheless, on the same day, 13 December 2000, Director Hudgins mailed Early a letter notifying her:

> This is a follow-up letter to inform you that your employment with the County of Durham is terminated effective December 13, 2000.

> Unless an extension has been approved, any employee who fails to report to work at the expiration of a leave of absence, shall be considered Absent Without Leave (AWOL) and will be separated from the County without notice.

Hudgins also attached a copy of the appeals process at DSS.

In accordance with that process, Early submitted a grievance to her immediate supervisor, Hasty, within 15 days of receiving her termination letter. On 22 December 2000, Hasty responded: "Leave without pay is granted only with the approval of the Department Head and supervisor and is based on the needs of the agency such as workload, need to fill the employee's job, etc. These factors were used in determining that we could only grant your leave without pay request until December 13, 2000." Within five days, Early then appealed to Hudgins. Hudgins responded in a letter dated 4 January 2001.

On 19 February 2001, Early filed a contested case petition with the State Office of Administrative Hearings ("OAH"), alleging (1) that she was dismissed without just cause contrary to N.C. Gen. Stat. § 126-35(a) (2003) and (2) that she was discriminated against based on her gender, age, and handicapping condition. An administrative law judge ("ALJ") denied DSS' motion to dismiss the petition as untimely after finding that DSS had failed to follow the required procedures outlined in N.C. Gen. Stat. § 150B-23(f) (2003) regarding notification of appeal rights.

Following a two-day hearing, the ALJ rendered an opinion containing 73 findings of fact. Based on those findings, the ALJ (1) dismissed Early's just cause claim for lack of subject matter jurisdiction on the ground that Early lacked sufficient months of service to assert a claim for just cause and (2) concluded that Early had failed to meet her burden of proving intentional discrimination based on gender, age, or handicapping condition. She, therefore, recommended that DSS' decision to discharge Early from employment be affirmed.

On 4 February 2002, the State Personnel Commission issued an "Amended Recommendation for Decision to Local Appointing Authority." The Commission adopted the ALJ's 73 findings of fact in their entirety with the addition of one sentence relating to Early's just cause claim: "However, there is no statutory requirement in Chapter 126 that County employees subject to the provision of Chapter 126 work a certain amount of time before becoming entitled to appeal a termination under Chapter 126."

Based on the findings, the Commission reached the same conclusion as the ALJ that Early had failed to prove discrimination based on gender, age, or handicapping condition. With respect to the just cause claim, however, the Commission concluded:

> Petitioner was entitled to bring a just cause claim. Based on Petitioner's supervisor's statement to her "no problem" when she discussed having the surgery with her on October 17, 2000, it is clear that Petitioner reasonably expected to be able to take sufficient leave to complete the recuperation process from the surgery. Respondent did not have just cause to terminate her employment for failing to return to work on December 13, 2000.

The Commission, therefore, recommended that DSS adopt the ALJ's decision regarding Early's claims of discrimination, but that DSS conclude "that there is jurisdiction for Petitioner's just cause claim and that Respondent's disciplinary action with regard to the Petitioner's employment be reversed for lack of just cause . . . ."

The Commission further recommended that DSS reinstate Early to her former position or a comparable position with back pay and back benefits. In the event that DSS did reinstate Early, the Commission ordered that Early could petition for attorneys' fees, "which shall be awarded in any amount to be determined by the Commission upon receipt and consideration of a Petition for Attorneys Fees and the required documentation."

On 18 April 2002, DSS issued its opinion, signed by Hudgins, stating that "[t]he Respondent does not adopt the entire recommendation of the Office of State Personnel . . . ." DSS specifically rejected only one sentence in the Commission's 73 findings of fact: the sentence that the Commission had added to the ALJ's findings of fact, stating that there was no months-of-service prerequisite to appealing a termination under the State Personnel Act. DSS concluded that OAH lacked subject matter jurisdiction to hear Early's just cause claim, but that, even if jurisdiction existed, DSS had just cause to terminate Early. In support of its decision, DSS stated that it was relying upon five specified findings of fact of the ALJ, which it then set forth. DSS did not mention the remaining findings of fact of the ALJ and the State Personnel Commission. DSS made a "final decision" that:

> The Petitioner failed to meet her burden with regards to the following:
>
> (i)   that the Respondent discriminated against her;
>
> (ii)  that the Court had jurisdiction to consider her dismissal for just cause;
>
> (iii) that Respondent lacked just cause for her dismissal.

DSS, therefore, affirmed the decision to discharge Early from employment.

On 29 May 2002, Early filed a petition for judicial review in Wake County Superior Court. On 11 July 2002, Judge Evelyn Werth Hill filed an order, concluding that the reasons given by DSS for not adopting the entire recommendation of the Commission were without merit; that Early's discharge was not supported by substantial evidence; that her discharge was arbitrary, capricious, and an abuse of discretion; that DSS did not have just cause to terminate Early's employment; and that OAH had subject matter jurisdiction to hear Early's just cause claim.[1] Judge Hill ordered DSS to reinstate Early into her former position or a comparable position and awarded her back pay and benefits and attorneys' fees. DSS appeals to this Court.

## Subject Matter Jurisdiction

On appeal, DSS contends that the trial court and this Court lack subject matter jurisdiction for two reasons: (1) Early was not entitled to file a contested case based on a lack of just cause, and (2) Early did not timely file her contested case. We disagree as to each contention.

---

1. Early has not pursued her discrimination claims.

A. Local Government Employees and Just Cause

**[1]** The State Personnel Act ("the SPA"), Chapter 126 of the North Carolina General Statutes, describes in detail the procedures that state and certain local government employees may use to appeal personnel decisions. N.C. Gen. Stat. § 126-5 (2003) specifies the employees to whom the SPA applies:

(a) The provisions of this Chapter shall apply to:

(1) All State employees not herein exempt, and

(2) All employees of the following local entities:

a. Area mental health, developmental disabilities, and substance abuse authorities.

b. *Local social services departments.*

c. County health departments and district health departments.

d. Local emergency management agencies that receive federal grant-in-aid funds.

(Emphasis added.)

Early, being an employee of DSS, a local social services department, falls under § 126-5(a)(2)(b) and, therefore, "[t]he provisions of" the SPA—Chapter 126—apply to her. DSS contends nonetheless that those provisions of the SPA that allow an employee to file a contested case alleging that his or her termination of employment lacked just cause should not apply to Early. Specifically, N.C. Gen. Stat. § 126-34.1 (2003) provides:

(a) A State employee or former State employee may file in the Office of Administrative Hearings a contested case under Article 3 of Chapter 150B of the General Statutes only as to the following personnel actions or issues:

(1) Dismissal, demotion, or suspension without pay based upon an alleged violation of G.S. 126-35, if the employee is a career State employee.

N.C. Gen. Stat. § 126-35(a) in turn provides: "No career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause."

DSS does not dispute that N.C. Gen. Stat. § 126-35(a) applies to the local employees specified in N.C. Gen. Stat. § 126-5(a)(2) even though § 126-35(a) refers only to State employees or former State employees. It argues, however, that in order for § 126-34.1(a)(1) to apply to a local employee, that employee must meet the same months-of-service requirement that any state employee must meet in order to become a "career State employee." The SPA defines a "career State employee" as "a State employee who: (1) [i]s in a permanent position appointment; and (2) [h]as been continuously employed by the State of North Carolina in a position subject to the State Personnel Act for the immediate 24 preceding months." N.C. Gen. Stat. § 126-1.1 (2003). DSS argues that since plaintiff has worked for DSS for less than 24 months, she is not entitled to the benefit of N.C. Gen. Stat. §§ 126-34.1(a) and 126-35.

DSS' argument, however, overlooks N.C. Gen. Stat. § 126-5's provisions regarding the scope of the SPA's coverage. As indicated above, with respect to State employees, § 126-5(a)(1) specifies that the provisions of Chapter 126 apply to "[a]ll State employees not herein exempt." N.C. Gen. Stat. §§ 126-5(c), (c1), (c2), (c3), (c7), and (c8) then specifically exempt certain categories of State employees from coverage under various portions of the SPA. In other words, § 126-5 specifies certain classes of State employees and identifies what portions of the SPA, if any, apply with respect to each class. N.C. Gen. Stat. § 126-5(c)(1) specifically exempts "[a] State employee who is not a career State employee as defined by this Chapter" from the SPA, with the exception of "the policies, rules, and plans" established by the State Personnel Commission pursuant to N.C. Gen. Stat. §§ 126-4(1)-(6) (2003) and 126-7 (2003) and with the exception of "the provisions of Articles 6 and 7 of this Chapter," relating to equal opportunity for employment and compensation and the privacy of state employee personnel records. N.C. Gen. Stat. § 126-35, the just cause provision, falls within Article 8—an Article not included within the list of those portions of the SPA applicable to non-career State employees.

By contrast, N.C. Gen. Stat. § 126-5(a)(2) asserts that the provisions of the SPA "shall apply to . . . (2) All employees of the following local entities," including local social services departments. It does not include any qualification of the "[a]ll employees" language comparable to the "not herein exempt" limiting language used for State employees. Further, none of the exemptions set out in N.C. Gen. Stat. § 126-5 refer to any local government employees. We are, therefore,

left with the statute's specification that "[t]he provisions of this Chapter [126] shall apply to . . . [a]ll employees of the following local entities" without any express limitation. The language of § 126-5(a)(2) is straightforward in subjecting *all* employees of certain types of local entities to the provisions of the SPA. The language of the statute, moreover, does not suggest that these local employees are state employees, but only that the provisions of the SPA apply to them as well as to state employees.

DSS appears to be arguing that this Court should craft what amounts to a new sub-categorization of local government employees included in N.C. Gen. Stat. § 126-5(a)(2)'s list based on the categorization of State employees in N.C. Gen. Stat. § 126-1.1. According to DSS' proposal, the class of local employees in N.C. Gen. Stat. § 126-5(a)(2) would be subdivided into "career local employees" and "non-career local employees," in the same way that State employees are categorized.[2] The selection by the General Assembly of 24 months as the necessary length of service to be a career employee required the weighing of policy considerations involving State government needs and State employee interests. We have identified no expression of intent by the General Assembly to differentiate among local government employees in the same manner that it chose to differentiate among State employees. Nor may this Court engage in policymaking, as defendant requests, and, on our initiative, decide that it would be appropriate to superimpose this structure on local government employees.

We note that the Office of State Personnel, in its regulations, has not adopted such an approach. Instead, the applicable regulations divide local employees into the following categories: permanent, probationary, trainee, time-limited, temporary, pre-vocational student, or emergency employees. 25 N.C. Admin. Code 1I.2002 (2005). The regulations then provide, with respect to local government employees, that "[a]ny employee, regardless of occupation, position, or profession may be warned, demoted, suspended or dismissed by the ap-

_____

2. The fact that N.C. Gen. Stat. § 126-5 specifies that "[t]he provisions of this Chapter shall apply to" the specified local government employees does not suggest that N.C. Gen. Stat. 126-1.1, defining the phrase "career State employee," applies to local government employees. The latter statute provides a definition of a specified phrase rather than substantive rights or procedures. This definition applies "unless the context clearly indicates otherwise." The definition set out in N.C. Gen. Stat. § 126-1.1 cannot be readily imposed on local government employees since it requires not only "a permanent position appointment," § 126-1.1(a), but also that the employee have been "continuously employed by the State of North Carolina" for a specified period of time, § 126-1.1(b). *Id.*

pointing authority. Such actions may be taken against employees with permanent status, as defined in 25 NCAC 1I.2002[c], only for just cause." 25 N.C. Admin. Code 1I.2301(a) (2005). "A permanent appointment is an appointment to a permanently established position when the incumbent is expected to be retained on a permanent basis." 25 N.C. Admin. Code 1I.2002(c).

In short, under the Office of State Personnel regulations, the applicability of the just cause requirement to local government employees is determined by the permanency of employment and not by months of service. This Court has previously looked to these regulations for assistance in construing the SPA, including N.C. Gen. Stat. § 126-35. *See, e.g., Steeves v. Scotland County Bd. of Health*, 152 N.C. App. 400, 406-08, 567 S.E.2d 817, 821-22 (construing the phrase "just cause"), *disc. review denied*, 356 N.C. 444, 573 S.E.2d 157 (2002); *Fuqua v. Rockingham County Bd. of Soc. Servs.*, 125 N.C. App. 66, 71, 479 S.E.2d 273, 276 (1997) (discussing when warnings are not required prior to termination for cause).[3]

Further, this Court has also held broadly: "Local government employees . . . are subject to the State Personnel Act. As such, they cannot be 'discharged, suspended, or demoted for disciplinary reasons, except for just cause.' G.S. § 126-35." *Gray v. Orange County Health Dep't*, 119 N.C. App. 62, 75, 457 S.E.2d 892, 901, *disc. review denied*, 341 N.C. 649, 462 S.E.2d 511 (1995). Despite repeated decisions applying N.C. Gen. Stat. § 126-35 to local government employees falling within N.C. Gen. Stat. § 126-5(a)(2), this Court has never suggested that a local government employee must have been employed for a particular period of time before N.C. Gen. Stat. § 126-35 becomes applicable. *See, e.g., Leeks v. Cumberland County Mental Health*, 154 N.C. App. 71, 76, 571 S.E.2d 684, 688 (2002); *Steeves*, 152 N.C. App. at 408, 567 S.E.2d at 822; *Souther v. New River Area Mental Health*, 142 N.C. App. 1, 5, 541 S.E.2d 750, 753, *aff'd per curiam*, 354 N.C. 209, 552 S.E.2d 162 (2001).

In the absence of any indication of a contrary intent by the General Assembly and in light of the language of the statute, the applicable administrative regulations, and this Court's prior decisions, we are compelled to reject DSS' request that we apply the substance of N.C. Gen. Stat. § 126-1.1 to local government employees. Accordingly, we overrule DSS' first assignment of error, in which it contends that N.C. Gen. Stat. § 126-35 does not apply to this plaintiff.

---

3. Significantly, DSS acknowledged in its brief that "Subchapter I of the North Carolina Administrative Code rules apply to local government employees."

## B. The Timeliness of Early's Contested Case Petition

**[2]** DSS also argues on appeal that the ALJ committed error in twice denying DSS' motion to dismiss Early's contested case petition as untimely. Under N.C. Gen. Stat. § 126-38 (2003), an employee must file her petition with the Office of Administrative Hearings "no later than 30 days after receipt of notice of the decision or action which triggers the right of appeal." DSS did not, however, base its final decision on any untimeliness; nor did it argue this issue before the trial court.

Nevertheless, the timeliness issue is properly before us because it goes to the question of our subject matter jurisdiction. *See Nailing v. UNC-CH*, 117 N.C. App. 318, 324-25, 451 S.E.2d 351, 355 (1994) (holding that a failure to comply with the 30-day deadline set out in N.C. Gen. Stat. § 126-38 deprives OAH, and thus this Court, of subject matter jurisdiction), *disc. review denied*, 339 N.C. 614, 454 S.E.2d 255 (1995). "The question of subject matter jurisdiction may be raised at any time." *Lemmerman v. A. T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85-86 (1986).

DSS argues that Early received Director Hudgins' letter dated 4 January 2001 on 8 January 2001 and, therefore, was required to file her contested case by 8 February 2001. Early actually filed her contested case petition with OAH on 19 February 2001. Thus, DSS argues, she filed 11 days late, and OAH did not have subject matter jurisdiction to hear her contested case.

DSS was, however, required to comply with N.C. Gen. Stat. § 150B-23(f) when notifying Early of its final decision. That provision of the Administrative Procedure Act specifies that the time limitation for filing a contested case does not begin to run until notice is given of the final decision. It specifies that "[t]he notice shall be in writing, and shall set forth the agency action, and shall inform the persons of the right, the procedure, and the time limit to file a contested case petition." *Id.* If the employer does not comply with the requirements for notice set out in N.C. Gen. Stat. § 150B-23(f), then a motion to dismiss a contested case petition as untimely is properly denied. *Jordan v. N.C. Dep't of Transp.*, 140 N.C. App. 771, 774, 538 S.E.2d 623, 625 (2000) ("The 30-day limitation period of N.C. Gen. Stat. § 126-38 does not begin to run until notice is provided in accordance with these requirements [of N.C. Gen. Stat. § 150B-23(f)]."), *disc. review denied*, 353 N.C. 376, 547 S.E.2d 412 (2001).

The 4 January 2001 letter does not meet the requirements of N.C. Gen. Stat. § 150B-23(f). First, it did not set forth the agency action. It

simply recited as "accurate and relevant to the present situation" general information regarding leave policies provided to Early, the fact that she was "expected to return to work full time no later than December 13, 2000" with no work restrictions, and the factors considered in determining that LWOP could be granted through 13 December 2000. Nothing in the letter explicitly stated an outcome regarding Early's appeal of her termination or even mentioned that Early was terminated. The letter closed with:

> I sincerely hope that you will experience a full recovery from your medical condition and will be able to resume your activities soon. For your information, I am enclosing another copy of the two documents referenced in #1 and #2 above [regarding LWOP policies].

In short, the letter simply reiterated facts that Hudgins believed pertinent without reaching any conclusions and expressed sympathy for plaintiff's medical condition. The letter did not finally resolve the grievance by stating that Early's dismissal was being upheld, but rather could be read as leaving open the possibility for further negotiation. This vagueness, while perhaps an understandable human response in delivering the bad news of a harsh result, cannot be reconciled with the requirements of N.C. Gen. Stat. § 150B-23(f).

As the Fourth Circuit held in construing N.C. Gen. Stat. § 150B-23(f):

> To satisfy these requirements, the written notice must communicate that the agency has acted and that this action is one that triggers the right to file . . . a contested case petition. . . . Unless the [agency does] this, [petitioners,] who will often have already engaged in lengthy negotiations with the [agency], will likely (and understandably) conclude that [the agency] is simply stating its present bargaining posture, which is open to further negotiation and does not trigger any limitations period.

*CM v. Bd. of Educ. of Henderson County*, 241 F.3d 374, 386 (4th Cir.), *cert. denied*, 534 U.S. 818, 151 L. Ed. 2d 18, 122 S. Ct. 48 (2001). A petitioner "cannot be expected to divine that such correspondence communicates conclusive agency action, . . . which triggers a short limitations period to pursue such a challenge." *Id.* We agree and accordingly hold that the 4 January 2001 letter did not constitute sufficient "notice of the decision or action which triggers the right of appeal" for purposes of N.C. Gen. Stat. § 126-38.

Further, that letter did not inform Early "of the right, the procedure, and the time limit to file a contested case petition." While DSS contends that it provided this information in its first 13 December 2000 letter, N.C. Gen. Stat. § 150B-23(f) requires that it be contained in the decision triggering the running of the 30-day time limit. If we were to adopt DSS' position, we would, in effect, be holding that an employer need only notify an employee at some point during her employment of her appeal rights in order to comply with N.C. Gen. Stat. § 150B-23(f). That is not, however, what the statute provides.

In any event, the material attached to the 13 December 2000 letter stated only that "[i]f the results are not satisfactory [after the internal grievance procedure], the employee may then appeal to the State Personnel Commission within 30 days." While this statement provided notice of the right to further review and the time limit, it cannot be considered by any stretch to be notification of "the procedure" to file a contested case petition. Compare Gray v. N.C. Dep't of Env't, Health & Natural Res., 149 N.C. App. 374, 379, 560 S.E.2d 394, 398 (2002) (holding that agency did not comply with § 150B-23(f) when it specified that the petitioner had 30 days to file a contested case petition with OAH pursuant to N.C. Gen. Stat. § 130A-24, but gave an incorrect address for OAH).

In sum, DSS failed to provide Early with the notice required under N.C. Gen. Stat. § 150B-23(f). Accordingly, the ALJ properly denied DSS' motion to dismiss. Both OAH and this Court have subject matter jurisdiction over Early's claims.

## Just Cause

### A. Standard of Review

**[3]** DSS asks us to examine two conclusions reached by the trial court: (1) that DSS did not have just cause to terminate plaintiff's employment and (2) that plaintiff was entitled to back pay and attorneys' fees. N.C. Gen. Stat. § 126-37(b1) (2003) provides:

In appeals involving local government employees subject to [the SPA], . . . the decision of the State Personnel Commission shall be advisory to the local appointing authority. . . . The local appointing authority shall, within 90 days of receipt of the advisory decision of the State Personnel Commission, issue a written, final decision either accepting, rejecting, or modifying the decision of the State Personnel Commission. If the local appointing authority rejects or modifies the advisory decision, the local appointing

authority must state the specific reasons why it did not adopt the advisory decision.

The local appointing authority's final decision is then "subject to judicial review pursuant to Article 4 of Chapter 150B of the General Statutes." N.C. Gen. Stat. § 126-37(b2) (2003).

Article 4 of Chapter 150B is entitled "Judicial Review" and N.C. Gen. Stat. § 150B-51 (2003), within that Article, sets forth the "[s]cope and standard of review":

> (a) In reviewing a final decision in a contested case in which an administrative law judge made a recommended decision and the State Personnel Commission made an advisory decision in accordance with G.S. 126-37(b1), the court shall make two initial determinations. First, the court shall determine whether the applicable appointing authority heard new evidence after receiving the recommended decision. . . . Second, if the applicable appointing authority did not adopt the recommended decision, the court shall determine whether the applicable appointing authority's decision states the specific reasons why the applicable appointing authority did not adopt the recommended decision. . . .
>
>     . . . .
>
> (b) . . . [I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

**EARLY v. COUNTY OF DURHAM DSS**

[172 N.C. App. 344 (2005)]

As our Supreme Court recently observed, "[w]hen the trial court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004).

The trial court below correctly first addressed the inquiries in N.C. Gen. Stat. § 150B-51(a). The court found and the record reflects that DSS did not hear any new evidence in reaching its final decision. Likewise, we agree with the trial court that DSS' final decision states the specific reasons why it did not adopt the State Personnel Commission's recommended decision.

With respect to the grounds for reversal or modification in N.C. Gen. Stat. § 150B-51(b), *Carroll* observes that subsections (b)(1)-(4) involve " 'law-based' inquiries," whereas the grounds listed in subsections (b)(5) and (6) involve " 'fact-based' inquiries." *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894 (quoting Charles E. Daye, *Powers of Administrative Law Judges, Agencies, and Courts: An Analytical and Empirical Assessment*, 79 N.C. L. Rev. 1571, 1592 n.79 (2001)). As such, appellate inquiries under N.C. Gen. Stat. § 150B-51(b)(1)-(4) receive *de novo* review and inquiries under N.C. Gen. Stat. § 150B-51(b)(5) and (6) receive review under the "whole record test." *Id.* at 659-60, 599 S.E.2d at 895.

*Carroll* explains each of these separate standards of review in greater detail:

> Under the *de novo* standard of review, the trial court considers the matter anew and freely substitutes its own judgment for the agency's. When the trial court applies the whole record test, however, it may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*. Rather, a court must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision. Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 660, 599 S.E.2d at 895 (internal citations and quotation marks omitted).

## B. The Just Cause Determination

**[4]** In arguing that the trial court erred in concluding that it lacked just cause to terminate Early, DSS first contends that the trial court applied the wrong standard of review. Specifically, DSS contends that Judge Hill erred by addressing both *de novo* review and the whole record test. *Carroll,* however, confirms that such a dual standard of review is appropriate when considering the question whether an employee was fired for just cause.

Our Supreme Court held in *Carroll* that "[d]etermining whether a public employer had just cause to discipline its employee requires two separate inquiries: first, whether the employee engaged in the conduct the employer alleges, and second, whether that conduct constitutes just cause for [the disciplinary action taken.]" 358 N.C. at 665, 599 S.E.2d at 898 (internal quotation marks omitted). The first half of the inquiry, *Carroll* instructs us, is a question of fact to be examined under the whole record test. *Id.* at 665-66, 599 S.E.2d at 898. The second half, by contrast, is a question of law to be examined *de novo. Id.* The trial court, therefore, was correct to apply both tests.

Even if the trial court's order could be viewed as not applying *Carroll's* precise analysis, reversal is not necessarily required or appropriate. *Id.* at 665, 599 S.E.2d at 898. According to *Carroll,* the task for this Court is simply to " 'address[] the dispositive issue(s) before the agency and the superior court' and determin[e] how the trial court *should have* decided the case upon application of the appropriate standards of review." *Id.* at 664-65, 599 S.E.2d at 898 (quoting *Capital Outdoor, Inc. v. Guilford County Bd. of Adjustment,* 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, J., dissenting), *adopted per curiam by* 355 N.C. 269, 559 S.E.2d 547 (2002)). We need not remand for reconsideration if we can "reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b)." *Id.* at 665, 599 S.E.2d at 898.

**[5]** DSS next argues that the trial court should not have rendered a decision on the issue whether Early was terminated for just cause because the ALJ dismissed the claim rather than addressing it on the merits. DSS requests: "[I]f this Court concludes that there is jurisdiction to hear this case, this matter should be remanded back to the

OAH for the receipt of evidence and the preparation of findings of fact[], conclusions of law and a recommended decision on the issue of whether there was just cause to terminate the Petitioner."

Contrary to DSS' contention, the trial court not only appropriately considered the issue of just cause; it was, in fact, required to do so. The decision being reviewed by the trial court was not the ALJ's decision, but rather DSS' final decision. DSS specifically decided that "even if the Office of Administrative Hearings had subject matter jurisdiction to hear Petitioner's just cause claim, there was just cause to terminate Petitioner." DSS then recited the five findings of fact of the State Personnel Commission upon which it relied in support of this conclusion. In a section of the decision entitled "Final Decision," DSS stated "[t]he Petitioner failed to meet her burden with regards to the following: . . . (iii) that Respondent lacked just cause for her dismissal." Since Early specifically challenged this determination in its petition for judicial review, the issue was squarely before the trial court.[4]

Further, there is no need to remand for a new evidentiary hearing, additional findings of fact and conclusions of law, or a recommended decision. DSS does not argue that it was in any way prevented from fully litigating the issue of just cause before the ALJ and does not explain why additional evidence is necessary. Moreover, the State Personnel Commission disagreed with the ALJ on the jurisdictional question and, therefore, actually made findings of fact and conclusions of law regarding just cause. It then submitted an advisory opinion to DSS on that issue. The State Personnel Commission was not, of course, bound by the ALJ's findings or conclusions:

"It is well established that an agency has the ability to reject the recommended decision of an administrative law judge. . . . Even though the administrative law judge ha[s] already made findings of fact and conclusions of law, the Personnel Commission ha[s] the ability to make its own findings of fact and conclusions of law if it cho[oses] to do so."

4. We observe that DSS applied the incorrect burden of proof in its final decision. In 2000, 2000 N.C. Sess. Laws ch. 190 § 13, the General Assembly amended N.C. Gen. Stat. § 126-35(d) to provide that the burden of showing that an employee was discharged, suspended, or demoted for just cause rests with the employer. N.C. Gen. Stat. § 126-35(d). This amendment was applied to all contested cases commenced on or after 1 January 2001. 2000 N.C. Sess. Laws ch. 190 § 14. Since Early's contested case was filed 19 February 2001, the amended N.C. Gen. Stat. § 126-35(d) applied and DSS bore the burden of proving just cause.

*Eury v. N.C. Employment Sec. Comm'n*, 115 N.C. App. 590, 597, 446 S.E.2d 383, 388 (quoting *Davis v. N.C. Dep't of Human Res.*, 110 N.C. App. 730, 737, 432 S.E.2d 132, 136 (1993)), *appeal dismissed and disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994). Here, the State Personnel Commission adopted the ALJ's findings of fact and reiterated them as its own, but then concluded that those facts did not establish just cause—an issue that was a question of law, as *Carroll* indicates. The trial court then agreed with the State Personnel Commission's analysis.

As Early points out, nowhere in its brief on appeal does DSS present any argument that the trial court erred in deciding as a matter of law that the conduct set forth in the State Personnel Commission's findings of fact did not amount to just cause or that those findings of fact—which have not been specifically rejected by DSS at any time—were incorrect. Further, DSS does not attempt to defend its own determination regarding whether just cause existed by explaining to the Court why the findings of fact upon which it relied were sufficient to establish just cause. While DSS contended in oral argument that it had just cause, we are precluded from addressing this issue since its brief contained no such argument. *See* N.C.R. App. P. 28(a) ("Review is limited to questions so presented in the several briefs. Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned.").

DSS does, in requesting a remand to OAH, state generally in its brief that "[t]here was conflicting evidence on the issue of just cause." DSS, however, had the opportunity in its final decision to resolve any conflict in the evidence by rejecting the State Personnel Commission's findings of fact and making its own findings based on the record. It chose not to do so and instead relied, in support of its determination that Early's dismissal was supported by just cause, on only five findings of fact of the State Personnel Commission. Four of those findings relate only to the fact that Early was notified that she was fired and that her termination was then upheld through the appeal process, while the fifth relates to a meeting that occurred within DSS one to two weeks after Early's surgery and does not address (1) what DSS told Early, (2) whether Early reasonably believed that her request for leave had been granted, or (3) DSS' acknowledgment before OAH that the leave had originally been granted through 17 January 2001.

DSS does not make any argument on appeal that these findings of fact establish just cause. DSS' brief, in fact, cites no authority suggesting that it had just cause to terminate Early or that it should be given an opportunity to supplement its existing findings of fact. Under Rule 28(b)(6) of the Rules of Appellate Procedure, "[a]ssignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."

While it might be tempting to address the question whether DSS had just cause to terminate Early, our Supreme Court has recently held: "It is not the role of the appellate courts, however, to create an appeal for an appellant. As this case illustrates, the Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam). We, therefore, uphold the trial court's reversal of DSS' decision that it possessed just cause to terminate Early.

C. Back Pay and Attorneys' Fees

**[6]** DSS' final assignment of error pertains to the trial court's award of back pay and attorneys' fees. In addition to reiterating its contention that a local government employee is not entitled to challenge her termination based on a lack of just cause, an argument rejected above, DSS also contends "that it was never the intention of the legislature to award back pay and attorney's fees to local DSS employees." DSS further argues: "[The] ALJ and the [State Personnel] Commission render advisory opinions. Neither they, nor Superior Court Judges have the authority to award back pay and attorney fees to local government employees pursuant to N.C.G.S. Chapter 126 or the North Carolina Administrative Code."

As DSS notes, any decision by the State Personnel Commission regarding back pay and attorneys' fees was advisory with respect to DSS. The trial court was required to review DSS' decision to reject that recommendation under N.C. Gen. Stat. § 150B-51. While DSS presents arguments regarding the Commission's lack of authority to require a "local appointing authority" to pay back pay or attorneys' fees, it does not cite any authority for its contention that the "the state cannot order when the County should compensate an employee for back pay and/or attorney fees." To the contrary, our courts have long held that "counties[] make up the state and are, literally, the state itself. . . . Simply stated, '[c]ounties are creatures of the General

Assembly and constituent parts of the State government.' " *Archer v. Rockingham County,* 144 N.C. App. 550, 553, 548 S.E.2d 788, 790 (2001) (quoting *Harris v. Bd. of Comm'rs,* 274 N.C. 343, 346, 163 S.E.2d 387, 390 (1968)), *disc. review denied,* 355 N.C. 210, 559 S.E.2d 796 (2002). The General Assembly may, therefore, decide when a county may be sued and when it may be required to pay back pay and attorneys' fees.

With respect to back pay, N.C. Gen. Stat. § 126-37 provides the best indication whether the General Assembly intended for employees of "local appointing authorit[ies]" to be treated like State employees and be able to seek back pay upon prevailing in a claim under the SPA. Subsection (c) of that statute states:

> If the local appointing authority is other than a board of county commissioners, the local appointing authority must give the county notice of the appeal taken pursuant to subsection (a) of this section. Notice must be given to the county manager or the chairman of the board of county commissioners by certified mail within 15 days of the receipt of the notice of appeal. The county may intervene in the appeal within 30 days of receipt of the notice. If the action is appealed to superior court the county may intervene in the superior court proceeding even if it has not intervened in the administrative proceeding. *The decision of the superior court shall be binding on the county even if the county does not intervene.*

N.C. Gen. Stat. § 126-37(c) (emphasis added). A major reason that a county would need to be informed and to have the opportunity to intervene is if a monetary award could be entered that would be paid from the county's coffers. There would also be little need for the provision making the superior court's decision binding on the county in the absence of the possibility of a monetary award.

Indeed, this Court has held that a county is an aggrieved party under the Administrative Procedure Act for purposes of appealing to superior court an award of back wages and attorneys' fees. *In re Appeal of Brunswick County,* 81 N.C. App. 391, 396, 344 S.E.2d 584, 587 (1986). Similarly, in *Lincoln County Dep't of Soc. Servs. v. Hovis,* 150 N.C. App. 697, 701, 564 S.E.2d 619, 621-22 (2002), this Court affirmed an ALJ's award of back pay and attorneys' fees against a Department of Social Services as a sanction for failure to comply with procedural requirements under N.C. Gen. Stat. § 150B-36(c)(3).

Because DSS presents no other argument as to why local government employees found to have been wrongfully discharged should not have the traditional back pay remedy available to them like other employees covered by the SPA, we hold that the trial court properly considered whether DSS' decision to reject the State Personnel Commission's recommendation of back pay should be reversed. *See* 25 N.C. Admin. Code 1B.0421 (2005) (discussing the State Personnel Commission's ability to award back pay and setting out a method for calculating it). Further, DSS has not offered any argument why, under the facts of this case, Early should not receive back pay. Accordingly, we affirm the trial court's determination that Early should receive back pay.

**[7]** With respect to attorneys' fees, DSS' contention that the trial court had no authority to award attorneys' fees disregards N.C. Gen. Stat. § 6-19.1 (2003). That statute provides:

> In any civil action . . . brought by a party who is contesting State action pursuant to G.S. 150B-43 or any other appropriate provisions of law, unless the prevailing party is the State, the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees, including attorney's fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency if:
>
> (1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and
>
> (2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

*Id.* This Court held in *McIntyre v. Forsyth County Dep't of Soc. Servs.*, 162 N.C. App. 94, 96-97, 589 S.E.2d 745, 747, *disc. review denied*, 358 N.C. 377, 598 S.E.2d 136 (2004), that this statute authorizes a superior court to award fees to the employee of a county Department of Social Services who has prevailed under the SPA. *McIntyre*, therefore, establishes the trial court's authority in this case to award attorneys' fees.[5]

---

5. Although *McIntyre* indicated that fees were not available in SPA cases for services rendered prior to judicial review, *id.* at 97, 589 S.E.2d at 747, N.C. Gen. Stat. § 6-19.1 was amended to permit such an award with respect to contested cases filed on or after 1 January 2001. 2000 N.C. Sess. Laws ch. 190 §§ 1, 14. The trial court in this case was, therefore, authorized to award fees for representation during the administrative proceedings.

Affirmed.

Judges HUNTER and LEVINSON concur.